**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Charles Grimm STEINBECK,
Defendant–Appellant.**

**No. 05CA0259.**

Colorado Court of Appeals,
Div. IV.

Sept. 20, 2007.

Rehearing Denied Nov. 29, 2007.

John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Alison Ruttenberg, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Charles Grimm Steinbeck, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of leaving the scene of an accident resulting in the victim's death. He also appeals the restitution component of his sentence. We reverse and remand for a new trial.

The charge in this case arises out of an incident in which defendant drove his car into his garage and hit the victim, who was sitting on a step at the back wall of the garage. After hitting the victim, defendant waited two hours to call 911. The victim died of injuries sustained from being hit.

Defendant represented himself through most of the case, including the trial.

I.   Right to Court–Appointed Counsel

Defendant first argues that his right to counsel was violated because the trial court erred in not appointing the public defender. We agree.

■   The Sixth Amendment of the United States Constitution protects a criminal defendant's fundamental right to assistance of counsel, which includes the right of an indigent defendant to have court-appointed counsel paid for by the state. *People v. Alengi*, 148 P.3d 154, 159 (Colo.2006). "[T]he constitutional right to counsel is of such a fundamental character that it invokes, of its own accord, a protective duty on the part of the court." *King v. People*, 728 P.2d 1264, 1269 (Colo.1986) (citing *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

Section 21–1–103, C.R.S.2006, codifies the representation of indigent defendants in Colorado. As pertinent here, section 21–1–103 provides:

(1) The state public defender shall represent as counsel, without charge except as provided in subsection (3) of this section, each indigent person who is under arrest for or charged with committing a felony if:

(a) The defendant requests it and he complies with subsection (3) of this section; or

(b) The court, on its own motion or otherwise, so orders and the defendant does not affirmatively reject, of record, the opportunity to be represented by legal counsel in the proceeding. When appointed by the court, the office of the state public defender shall be limited to defending the indigent person and shall not be appointed to act as advisory counsel. The court shall not appoint a public defender to represent a defendant if such defendant does not fall within the fiscal standards or guidelines established by the supreme court for appointment of public defenders.

■   Chief Justice Directive 04–04 establishes the process for determining whether a defendant is indigent and the guidelines for the appointment of public defenders. "Chief Justice directives are an expression of Judicial Branch policy and are to be given full force and effect in matters of court administration." *Hodges v. People*, 158 P.3d 922, 926 (Colo.2007).

■   Although a court may not appoint a public defender unless the defendant falls within the fiscal standards established by the supreme court, "[a] defendant need not be destitute to qualify for court-appointed counsel; 'it is sufficient that the defendant lack the necessary funds, on a practical basis, to retain competent counsel.'" *Alengi*, 148 P.3d at 159 (quoting *Nikander v. Dist. Court*, 711 P.2d 1260, 1262 (Colo.1986)). However, a defendant bears the initial burden of raising his claim of indigency to the court. *Nikander*, 711 P.2d at 1262.

Section 21–1–103(3), C.R.S.2006, provides that the public defender, subject to judicial review, determines whether a defendant meets the indigency guidelines. That section states in relevant part: "The determination of indigency shall be made by the state public defender, subject to review by the court." Clarifying the meaning of "subject to review by the court," Chief Justice Directive 04–04 imposes a duty upon the court to make a

specific finding about whether the public defender's analysis concerning claimed indigency is correct. Section II.D. states:

> If the Public Defender finds the person to be ineligible and denies representation, the court shall determine the following: 1) whether the court disagrees with the Public Defender's evaluation and determination, and the Public Defender should be appointed; or 2) whether the person is not eligible for state-paid representation. The court may use the judicial district's Collection Investigator(s) to provide a recommendation to the court relative to the above determinations, if additional analysis is needed.

"Shall" is a mandatory word that creates an obligation. *Hodges*, 158 P.3d at 926 (citing *People v. Dist. Court*, 713 P.2d 918, 921 (Colo.1986)).

■ The duty imposed by Chief Justice Directive 04–04 is grounded in a long history of inherent judicial power to appoint counsel for a defendant without the means to afford counsel in order to ensure a fair trial for the defendant. *See People v. Mullins*, 188 Colo. 29, 33, 532 P.2d 736, 739 (1975). Before a court may require a defendant claiming indigency to go to trial without the benefit of counsel, the court has a "duty to make a careful inquiry about the defendant's financial condition." *King*, 728 P.2d at 1270. A court need not review every aspect of the public defender's analysis, but it must ask sufficient questions to determine for itself the issue of indigency. *See State v. Dean*, 163 Wis.2d 503, 471 N.W.2d 310, 315 (Ct.App. 1991). A court must also make specific findings to support a determination of nonindigency. *See Potter v. State*, 547 A.2d 595, 600 (Del.1988) ("[I]t is essential to fairness and to any meaningful form of appellate review that specific findings of fact be entered to support the determination of nonindigency and the denial of appointed counsel.").

■■ Although a trial court's determination regarding indigency is reviewed for abuse of discretion, such a determination is subject to careful scrutiny because it involves a fundamental constitutional right. *Nikander*, 711 P.2d at 1262. The improper denial of counsel is a structural error that demands automatic reversal of the conviction. *See People v. Miller*, 113 P.3d 743, 749 (Colo. 2005) (citing *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).

## A. Procedural Facts

Defendant initially obtained private counsel who later withdrew from the case based on defendant's unwillingness or inability to pay his fees. Defendant then obtained a second private counsel who later withdrew citing "unreconcilable differences." Thereafter, defendant appeared pro se for the rest of the hearings, during which he repeatedly stated that he wanted an attorney and could not represent himself.

On December 5, 2003, the court asked, "Do you have any reason to believe that you would have the right to have counsel appointed for you because you are indigent?" Defendant responded, "Possibly." The court then asked how defendant was employed, to which he replied, "Self." The court also asked what defendant's income was, to which he replied, "It varies." The court did not conduct any further inquiry at that time regarding defendant's finances. At the end of the hearing, the court ordered a competency evaluation.

Several months later, defendant again appeared pro se at a hearing where the court ruled that defendant was competent. Defendant requested counsel, and the following exchange regarding defendant's income ensued:

THE COURT: And you are employed?

THE DEFENDANT: Yes.

THE COURT: So you would not qualify for appointed counsel?

THE DEFENDANT: I don't know that.

THE COURT: Are you single, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: No children?

THE DEFENDANT: Yes, I have children.

THE COURT: Okay. How many people are you supporting?

THE DEFENDANT: Oh, myself.

THE COURT: Do you have child support payments?

THE DEFENDANT: No.

THE COURT: So you are paying—you support yourself. What I am showing here on the last guideline is $935 a month would be the cut off for court-appointed counsel under the federal guidelines. Do you make more than that or less than that?

THE DEFENDANT: Well, some months I make a lot more than that and some months I don't.

THE COURT: Annual income guideline is 14,031.

THE DEFENDANT: Is the highest number?

THE COURT: That's the amount that you would have to be below to qualify for.

THE DEFENDANT: 14031, okay. THE COURT: And did—

THE DEFENDANT: Is there an application for that?

The court then gave defendant an application for the public defender's office and a list of "slow pay low pay attorneys." Defendant indicated that he wished to find his own attorney, but the court told him to apply to the public defender's office immediately.

At the next hearing, defendant reported that he had contacted eighteen of the "slow pay low pay" attorneys from the list, three had responded, but he could not afford their rates. Defendant stated he was still attempting to get counsel, and the court stated it would give him thirty more days, but did not mention applying for the public defender's office or otherwise inquire as to defendant's finances.

Defendant appeared at the next hearing without an attorney and stated that he still could not afford any of the "slow pay low pay" attorneys. The following colloquy then took place:

THE COURT: Have you applied for the PD?

THE DEFENDANT: No, I was under—I understood that you have to apply.

THE COURT: Well, you have to qualify. There is an application process and you have to qualify. Are you employed, sir?

THE DEFENDANT: Well, I have my own business.

THE COURT: You have your own business. How many people in your household that you support?

THE DEFENDANT: Just me.

THE COURT: The income eligibility guidelines if you make in excess of $970 a month, you would not fit the guidelines.

THE DEFENDANT: How much?

THE COURT: 970. I don't know if you intend to apply or whether—

THE DEFENDANT: Do you have an application?

THE COURT: There is information in the podium for application. Mr. Steinbeck, I suspect you will not qualify. You have a business that has some value to it. But you are welcome to try. It is time howeverer to move this case forward so we need to set this matter for trial.

The court did not inquire into the value of defendant's business.

A month later, defendant informed the court that he had applied to the public defender's office that morning and that he had to supply additional documentation. The following exchange regarding defendant's financial status then took place:

THE COURT: [Defendant], do you recall what your adjusted gross income was on your last tax return?

THE DEFENDANT: Probably around $10,000.

THE COURT: I'm sorry, about $10,000, you said which would probably qualify.

The court continued the hearing for a week.

The next week, the court stated that defendant had not qualified for the public defender's office and went on to reset the trial date. The court made no further inquiry regarding defendant's financial status and entered no findings regarding defendant's qualifications. Defendant represented himself through trial and was convicted.

### B. Application

The People argue that defendant impliedly waived his right to counsel through his con-

duct and that the waiver was knowing and intelligent because defendant was properly advised under *People v. Arguello,* 772 P.2d 87 (Colo.1989). However, even assuming without deciding that the *Arguello* advisements which defendant received early in the case were still effective when defendant was rejected from the public defender's office, we conclude that defendant was entitled to a public defender if he was indigent, and the court still had an obligation to review the public defender's finding that defendant was not indigent. The People cite no case, nor are we aware of any, that suggests a defendant can waive his statutory right to have the court review the public defender's determination of indigency. Thus, the issue on appeal is not whether defendant knowingly and intelligently waived his right to counsel, but instead whether defendant was denied his right to court-appointed counsel.

There is no question that the trial court was on notice that defendant might have been considered indigent because defendant provided the trial court on more than one occasion with facts indicating that he could not afford to retain counsel. *See Alengi,* 148 P.3d at 160. Furthermore, defendant complied with the procedures for determining his eligibility for court-appointed counsel by filing an application with the public defender's office. Defendant also specifically informed the court on the same day that he applied for the public defender's office that his tax return from the year before showed that he made around $10,000, which is below the qualification guidelines for a public defender. The court even speculated that defendant should qualify for the public defender's services.

A week later, the court summarily noted that defendant had been rejected by the public defender's office. The following exchange took place:

THE COURT: Mr. Steinbeck, this was again set for appearance of counsel. It appears that you have applied for the PD but do not qualify.

THE DEFENDANT: I was a reject, and I am surprised actually.

THE COURT: Thank you.

The court proceeded to set the trial without any further inquiry into defendant's finances and without stating whether it agreed or disagreed with the public defender's denial of indigency, despite being on notice that defendant should qualify for the public defender's services based on the statements he made at the prior hearing.

Nor does the record reflect whether or how the court determined the basis for the public defender's denial of defendant's application. Although the record establishes that the public defender's office rejected defendant's application, the information in the application clearly shows that defendant qualified for a public defender. The application has a signature in red ink beneath the "investigator/clerk" signature space and a check mark in red ink in the box labeled "Above guidelines." The rest of the application is filled out in black ink, presumably by defendant. There is no signature in the space provided for the judicial officer, and there is no notation regarding whether the request was granted or denied. Therefore, we cannot determine from this record that the court even looked at defendant's application, much less considered any other information in accepting the public defender's conclusion that defendant was above the guidelines.

Furthermore, the evidence available in the record suggests defendant should have qualified for the public defender's services. Defendant's statement that he made only $10,000 the previous year indicated that he was below the guidelines. His application indicated that he had no monthly income with monthly expenses of $1900; he had no equity in his home because the value of his house was less than the mortgage against it; and his listed assets were worth less than a few hundred dollars. According to the eligibility worksheet, Chief Justice Directive 04–04, Attachment A, the information on defendant's application showed that he was indigent. There is nothing else in the record to show that the information on defendant's application was incorrect. Thus, it appears on the basis of this record that defendant should have qualified for the public defender's services.

■ If the court had reviewed defendant's application, it should have noticed the discrepancy between the information regarding his income and the investigator's determination that defendant was above the guidelines for indigency. Considering this discrepancy, with no other evidence in the record to explain the discrepancy, and no findings or further inquiry by the trial court, we conclude the trial court abused its discretion in accepting the public defender's indigency determination.

■ Accordingly, defendant was wrongfully denied his constitutional right to court-appointed counsel, and the conviction must be reversed and the case remanded for a new trial. *See Miller,* 113 P.3d at 749.

## II. Restitution

In the event that defendant is convicted on remand, the issue of restitution is likely to recur, and so we address it here. Defendant argues that the trial court erred in ordering him to pay restitution for expenses related to the victim's death because he was not criminally charged with causing the death and there was no evidence that his delay in reporting the accident was the proximate cause of the victim's death. We disagree.

Section 18–1.3–602(3)(a), C.R.S.2006, defines "restitution" as "any pecuniary loss suffered by a victim and includes … losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." " 'Proximate cause' means a cause that in 'natural and probable sequence produced the claimed injury' and 'without which the claimed injury would not have been sustained.' " *People v. Lassek,* 122 P.3d 1029, 1035 (Colo.App.2005) (quoting *People v. Stewart,* 55 P.3d 107, 116 (Colo.2002)). A victim is "any person aggrieved by the conduct of an offender." § 18–1.3–602(4)(a), C.R.S.2006.

The restitution statute is to be liberally construed to serve the General Assembly's goals of rehabilitating offenders, deterring future criminality, and compensating victims. *Lassek,* 122 P.3d at 1034. A trial court's determination regarding the terms and conditions of a restitution order will be overturned only if there was a gross abuse of discretion. *Id.*

We reject defendant's argument that because the charge of the crime, leaving the scene of an accident resulting in death, did not allege that he caused the victim's death, he cannot be ordered to pay restitution for losses associated with the victim's death as part of his sentence. The restitution statute does not require that a defendant be charged with a specific act to be ordered to pay restitution. The statute only requires that the conduct underlying the basis of the defendant's criminal conviction proximately caused the victim's losses. *See People v. Brigner,* 978 P.2d 163, 164 (Colo.App.1999); *see also* § 18–1.3–602(3)(a).

Here, there was sufficient evidence in the record that defendant's conduct in hitting the victim with his vehicle proximately caused the victim's death: An accident reconstructionist testified that the victim had been struck by defendant's car; the victim's mother testified that defendant admitted to her that he hit the victim with his car; and the medical examiner testified that the victim's pelvis was broken by a blunt, crushing force, and the victim bled to death because of such injury.

Furthermore, the conduct underlying the charge of leaving the scene of an accident was defendant's hitting the victim with his car, which he admitted; causing an accident; and then leaving the scene of this accident. Although the district attorney elected to charge defendant with leaving the scene of an accident instead of a crime based on his causing the victim's death, the court is not restricted from ordering restitution because of the charge elected. The restitution statute does not require proof of the same elements required to prove a crime of causing a death. Thus, lack of evidence regarding a crime based on causing a victim's death does not prevent a court from ordering restitution where, as here, the crime of which the defendant is convicted arose from acts that caused the victim's death. *See Brigner,* 978 P.2d at 164.

Accordingly, should defendant be convicted on retrial of the charge of leaving the scene of an accident resulting in death, the trial

court has discretion whether to order restitution for expenses related to the victim's death.

The judgment of conviction and sentence are reversed, and the case is remanded to the trial court for a new trial consistent with the views expressed in this opinion.

Judge VOGT and Judge HAWTHORNE concur.