June 13, 2019

**Supreme Court**

No. 2015-295-C.A.

(P2/12-3130A)

State               :

v.             :

Mario Souto.        :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State               :

v.              :

Mario Souto.       :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The defendant, Mario Souto, appeals from a judgment of conviction on three counts—assault of a police officer, resisting arrest, and disorderly conduct—following a two-day jury trial in Providence County Superior Court. The defendant represented himself at trial after the trial justice determined that the defendant had waived his constitutional right to counsel. On appeal, the defendant contends that he did not voluntarily, knowingly, or intelligently waive his right to counsel. For the reasons set forth herein, we affirm the judgment of conviction.

**I**

**Facts and Travel**

**A**

**Pretrial**

In November 2012, defendant was charged with assault of a police officer (count 1), simple assault (count 2), resisting arrest (count 3), and disorderly conduct (count 4) following an incident with Pawtucket police officers on May 28, 2012. The details of that incident are not necessary for the resolution of this appeal.

Following his arrest, defendant reached out to the Public Defender's office for legal representation, but was deemed ineligible for services. By January 2013, defendant had engaged Attorney Thomas Connors (Connors) to represent him, and the case progressed toward trial for over a year. On March 13, 2014, however, Connors moved to withdraw, citing a breakdown in the attorney-client relationship and defendant's desire to hire a different attorney. After confirming that defendant wanted to dismiss Connors from his representation, and that defendant had the funds to hire a new attorney, the hearing justice granted the motion to withdraw.[1] At that

---

[1] At the hearing during which the hearing justice considered Connors' motion to withdraw, the hearing justice's colloquy with defendant proceeded, in pertinent part, as follows:

| | |
|---|---|
| "THE COURT: | Is that true, you can't work with Mr. Connors anymore? |
| "THE DEFENDANT: | Yes, Your Honor. |
| "THE COURT: | And you want to get a new attorney? |
| "THE DEFENDANT: | Yes, Your Honor. |
| "* * * | |
| "THE COURT: | Can you afford an attorney? |
| "THE DEFENDANT: | Yes, I can. |
| "* * * | |
| "THE COURT: | Any objection to my letting Mr. Connors go and you will be representing yourself all alone? Is that what you want to do right now? |
| "THE DEFENDANT: | No, I'll just hire an attorney. |
| "THE COURT: | Okay. So I'm going to let him go, right? |
| "THE DEFENDANT: | Yes, Your Honor. |
| "THE COURT: | Motion to withdraw is granted. Two weeks from today I'm going to ask you who the attorney is. Please get to an attorney. It's only going to help. You can do it yourself if you want. I don't recommend it. That's just me, but it's up to you." |

- 2 -

hearing, the hearing justice repeatedly encouraged defendant to retain an attorney, but also informed defendant that he had a right to represent himself at trial.[2]

The defendant appeared before the same hearing justice five more times over the course of the next two months for determination of an attorney. At each hearing, defendant represented to the hearing justice that he had attempted to communicate with attorneys to establish representation, but had not yet retained counsel. The defendant also stated at those hearings that he was financially able to retain counsel, but that he was uncomfortable with paying a large sum of money upfront, given his experience with his former attorneys. The defendant further made clear that he did not want to proceed to trial *pro se*. During a hearing on May 15, 2014, the hearing justice set a status conference for September 2014, and instructed the parties to be ready for trial on or after October 1, 2014.

The defendant still had not retained an attorney by the status conference on September 15, 2014. The defendant indicated that he had faced some unforeseen financial issues in the intervening months. The defendant also reiterated his discomfort with the retainer system that would require him to pay an attorney upfront.[3] The hearing justice declined to continue the case further and reiterated that it would be tried on or after October 1, 2014.

---

[2] The defendant also originally asked for four months to hire an attorney following Connors' withdrawal, but the hearing justice denied his request, stating: "No, you can't. Your case is already scheduled for disposition. It's been conferenced by Mr. Connors and the prosecutor already. It's ready to go."

[3] The hearing justice engaged in the following colloquy with defendant at the September 15, 2014 hearing:

> "THE COURT: [This case has] been continued for some time. I've had this case for six months and gone back and forth with you. Are you going to get an attorney on this?
>
> "THE DEFENDANT: Yes, I am.

On February 4, 2015, the case came before a second justice of the Superior Court for trial. At that time, defendant had not retained counsel and further stated that he could no longer afford to hire an attorney. The second hearing justice continued the case for one week to give defendant time to make an appointment with the Public Defender's office to determine if he would be eligible for its services. In the week that followed, defendant met with a representative from the Public Defender's office, but, again, he was deemed ineligible for services. The defendant appeared before the second hearing justice for determination of attorney three more times, and he was granted three more continuances on February 11, February 13, and February 20, until the second hearing justice scheduled a March 11, 2015 trial calendar call with a trial date certain on April 1, 2015.[4]

On April 1, 2015, a private attorney stood with defendant after discussing possible representation, and the second hearing justice, again, continued the matter, this time so the attorney and defendant could meet to determine whether the attorney would be retained. The defendant did not retain that attorney, however, and instead appeared before the first hearing justice again on May 4, 2015, without representation. The case was once again scheduled for trial.

---

| "THE COURT: | And how many times have I asked you that? |
| "THE DEFENDANT: | When the attorney comes and sits down at the table with me, I'll get an attorney. Until then, I'm not giving anyone my money until we have an understanding. I already told you that, Your Honor." |

[4] The case was originally scheduled for trial on March 30, 2015, but that date was changed to April 1, 2015.

**Trial**

On May 18, 2015, more than one year after Connors' motion to withdraw was granted, the case was set for a jury trial before a third justice of the Superior Court. The defendant told the trial justice that he remained unrepresented and was "not going to go forward without counsel." The trial justice replied that the trial would be "going forward because those are my decisions." The trial justice proceeded to provide a summary of the travel of the case, particularly noting defendant's *pro se* appearances before the two hearing justices. Following her summary of the travel of the case, the trial justice stated:

> "The [c]ourt rules that this case will go forward today as scheduled. The Defendant's right to select counsel and engage the services of counsel is certainly an important right, but it is not absolute, and this case must go forward. The State has been ready on numerous occasions. The [c]ourt finds that the Defendant appears to be foot dragging, and under all of these circumstances, the [c]ourt finds that there is no just reason for delay and we must go forward with this case and the matter is reached. [The defendant's] exception is noted.

> " * * * I will not be appointing standby counsel because he is not eligible for the [c]ourt to appoint standby counsel at anyone's expense but the Defendant's. And of course the Public Defender has indicated at least on two occasions he's not eligible."

During jury selection, but outside of the presence of the jurors, defendant reiterated his concern about proceeding to trial without counsel. He stated: "I don't want to go forward with the case. You're forcing me to go forward with the case. That's the way I feel inside my heart. I don't feel like I can represent myself. You are forcing me to do something I don't want to do." The trial justice proceeded with selection of the jury, and, after the jurors were duly sworn, the state gave its opening statement. The trial justice offered defendant the opportunity to give an opening statement, but defendant instead responded: "I take the Fifth. * * * I don't want to go forward

because I don't have an attorney. You guys are forcing me." The trial justice struck defendant's comments from the record, informed the jury that "[t]he [c]ourt has determined that this case will go forward with this gentleman being given the opportunity to represent himself[,]" and instructed the state to call its first witness.

The state presented three witnesses: former Pawtucket police officer Michael Lajoie, Pawtucket police officer John Donley, and Pawtucket police officer Mark Ramos.

Officer Lajoie testified to an encounter with defendant on May 28, 2012, which resulted in a physical altercation between the two during which Officer Lajoie suffered significant injuries. At some point, Officer Lajoie noticed that his "right foot was turned around 180 degrees the wrong direction." By that time, other officers had arrived for backup, and those officers took defendant into custody while Officer Lajoie was transported to the hospital.

Following Officer Lajoie's testimony, the trial justice asked defendant if he had any questions for the witness, to which defendant replied: "No, because I want to talk to the jurors."

Officer Donley testified next. According to Officer Donley, he and Officer Ramos responded to a call for backup to a store parking lot, and as the two arrived, he observed Officer Lajoie and defendant yelling at each other in a "heated verbal argument." Officer Donley testified that he then "observed [defendant] push Officer Lajoie to the ground." When the officers caught up to defendant and Officer Lajoie, they attempted to take defendant into custody, but he resisted. Officer Donley testified that he used pepper spray and an "open hand slap to the side of his face * * * [a]s a distraction technique" to "successfully handcuff [defendant] without further incident."

Officer Donley testified that he observed Officer Lajoie's foot to be "dangling abnormally[,]" and called a rescue. He also stated that he and Officer Ramos transported defendant to the Pawtucket police station and that defendant was spitting excessively while in the vehicle.

Officer Donley testified that defendant did not follow commands once at the police station, so they needed to "take him back down to the ground and re-handcuff him" prior to placing him in a cell.

Following that testimony, defendant attempted to cross-examine Officer Donley. However, defendant had difficulty forming questions for the witness and instead began testifying.[5] After several unsuccessful attempts at cross-examination, defendant expressed his confusion about the process to the trial justice, and then stated:

> "I don't want to go forward because I'm not a lawyer or anything. You just handed me the form this morning, and now I went home and that was it. Nobody -- I don't have none of my witnesses. I

---

[5] For example, defendant began his cross-examination with the following questions and statements:

| "[THE DEFENDANT]: | Officer, you just said that I was spitting behind the cruiser, right? |
|---|---|
| "* * * | |
| "[THE WITNESS]: | Yes. |
| "[THE DEFENDANT]: | I was spitting because you guys pepper sprayed me and you and your partner was saying, when I was behind the cruiser, that you all was going to beat me up at the station, so that's exactly what I did. |
| "THE COURT: | One moment, please. Is that a question or a statement? |
| "THE DEFENDANT: | I'm asking him. I'm asking him questions and I'm going -- |
| "THE COURT: | You're asking him, is that a fact. Is that what you're saying? |
| "THE DEFENDANT: | Yes. |
| "THE COURT: | Read back what the Defendant stated. |
| "* * * | |
| "THE COURT: | And is that a question? |
| "THE DEFENDANT: | I say, your Honor, I was spitting on the floor, not at the cops -- |
| "THE COURT: | No, sir. This is not testimony. Strike that question altogether, Ladies and Gentlemen. Disregard it. If you have a question, try again. Okay?" |

don't have anything.  You guys threw everything -- you know, put yourself in my shoes."

The trial justice instructed the jury to disregard defendant's statements and asked the state to call its next witness.

The state's final witness at trial was Officer Ramos.  He gave a similar account to Officer Donley's testimony.

The defendant also attempted to cross-examine Officer Ramos, but was again unsuccessful. The defendant told the trial justice, in the presence of the jury, that he felt unqualified to represent himself, and that the trial justice "forced [him] to go forward."  After the state rested, the trial justice gave defendant the opportunity to testify in narrative form, but defendant declined.  The defendant also refused to give a closing statement, saying, "at this point, I don't know what is going on."  After the prosecutor gave a closing statement, the trial justice charged the jury with instructions and excused them for the day.

The following morning, Attorney Thomas DeSimone (DeSimone) entered his appearance for defendant on the record, stating that defendant had retained him around nine o'clock the previous night.  DeSimone asked that the "case go back to the beginning so that [defendant] can actually have a lawyer represent him."  The trial justice denied that request.

The jury found defendant guilty as to all pending charges: assault of a police officer (count 1), resisting arrest (count 3), and disorderly conduct (count 4).[6]

---

[6] The state dismissed the charge for simple assault (count 2) prior to jury deliberations.

## Posttrial

On May 28, 2015, defendant, who remained represented by counsel, filed a motion for a new trial. The defendant averred that he had been denied his constitutional rights at trial because he did not have representation. After hearing argument, the trial justice rendered a decision from the bench denying defendant's motion. The trial justice concluded that, prior to beginning trial, she had "found that the Defendant willfully and intentionally entered into a strategy to manipulate the system and delay trial indefinitely. And in doing so, he knew he ran the risk of a trial without a lawyer. His strategy was knowing and voluntary and intelligent * * *."[7] Additionally, the trial justice noted that, "[t]he fact that Defendant hired Mr. DeSimone so expeditiously on the night of May 18th demonstrates further, speaks volumes, as to the extent to which Defendant misled the [c]ourt about his inability to engage counsel." The trial justice further determined that the jury followed the instructions she had given, and that, if she had been sitting without a jury, she would have come to the same conclusion based on the evidence presented at trial.

The defendant was sentenced on count 1 to three years' imprisonment, with fifteen months to serve and the remainder suspended, with probation. As to count 3, defendant was sentenced to one year suspended, with probation, to run consecutively to the sentence for count 1. As to count

---

[7] At the hearing on defendant's motion for a new trial, the trial justice agreed that she had not specifically used the words "knowing, intelligent, and voluntary" waiver of counsel on record prior to trial. However, the trial justice emphasized that she denied defendant's request for a continuance prior to trial after she had determined that defendant's failure to engage counsel "constituted an intelligent, intentional strategy on the part of the Defendant and an effort to manipulate the system by * * * stalling * * * trial[.]" Moreover, defendant concedes that "[w]hile [the trial justice] did not make this specific finding before the trial began, her ruling made clear that she considered [defendant's] actions to be tantamount to a voluntary, knowing, and intelligent waiver of the right to counsel."

4, defendant was sentenced to six months suspended, with probation, to run concurrently to the count 3 sentence. The defendant filed a notice of appeal on July 8, 2015.[8]

## II

## Standard of Review

This Court will conduct a *de novo* review of "a trial justice's determination as to whether or not a criminal defendant's waiver of his or her Sixth Amendment right to counsel is knowing, voluntary, and intelligent[.]" *State v. Cruz*, 109 A.3d 381, 389 (R.I. 2015) (quoting *State v. Sampson*, 24 A.3d 1131, 1139 (R.I. 2011)). However, "even when the *de novo* standard is applied to issues of constitutional dimension, we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference in conducting our review." *Id.* (brackets omitted) (quoting *State v. Eddy*, 68 A.3d 1089, 1098 (R.I. 2013)).

## III

## Discussion

On appeal, defendant argues that the trial justice erred in concluding that defendant made a voluntary, knowing, and intelligent waiver of his constitutional right to counsel. Specifically, defendant contends that the trial justice erred by (1) failing to independently determine that defendant was not indigent prior to trial and (2) "fail[ing] to recognize that [defendant's] decision to dismiss his first trial lawyer was not made with the requisite knowledge that he would be required to proceed to trial *pro se* if he did not hire substitute counsel * * *[.]"

---

[8] The defendant filed his appeal prior to entry of the judgment of conviction. However, it is well settled that a premature notice of appeal will be considered "timely so long as a final judgment is entered thereafter." *State v. Austin*, 114 A.3d 87, 94 n.9 (R.I. 2015) (quoting *State v. Mercurio*, 89 A.3d 813, 817 n.2 (R.I. 2014)).

"The Sixth Amendment to the United States Constitution and article 1, section 10 of the Rhode Island Constitution afford an accused the right to the assistance of counsel in all criminal prosecutions." *Cruz*, 109 A.3d at 390. "Whether defense counsel is retained or appointed, this right ensures that the trial is fair." *Id.* (quoting *State v. Laurence*, 848 A.2d 238, 252 (R.I. 2004)). It is also true that a criminal defendant "has the right to proceed *pro se* at trial representing himself or herself, provided that his or her waiver of counsel is valid." *Id.* A defendant must voluntarily, knowingly, and intelligently waive his or her right to counsel for the waiver to be valid. *Id.*

"When confronted with a defendant's purported waiver of counsel, this Court employs a two-prong analysis to determine the validity of that waiver." *Cruz*, 109 A.3d at 390. Thus, "we must first determine whether the waiver was 'voluntary,' and then we must determine whether the waiver was 'knowing and intelligent.'" *Id.* (quoting *Laurence*, 848 A.2d at 253). In assessing whether there has been a valid waiver of counsel, "we examine the totality of the circumstances." *Laurence*, 848 A.2d at 253. We have stated that the following factors, as first outlined in *State v. Chabot*, 682 A.2d 1377 (R.I. 1996), are relevant to this consideration:

> "(1) the background, the experience, and the conduct of the defendant at the hearing, including his age, his education, and his physical and mental health; (2) the extent to which the defendant has had prior contact with lawyers before the hearing; (3) the defendant's knowledge of the nature of the proceeding and the sentence that may potentially be [imposed]; (4) the question of whether standby counsel has been appointed and the extent to which he or she has aided the defendant before or at the hearing; (5) the question of whether the waiver of counsel was the result of mistreatment or coercion; and (6) the question of whether the defendant is trying to manipulate the events of the hearing." *Chabot*, 682 A.2d at 1380.

However, we also note that this Court has made clear that "consideration of the six *Chabot* factors [i]s mandatory only in cases in which the mental competency of the defendant is questioned; in all

- 11 -

other cases, the factors are relevant but need not be addressed factor by factor." *State v. Bluitt*, 850 A.2d 83, 87 (R.I. 2004).

## A

## Voluntary

First, defendant argues that the trial justice erred in finding a voluntary waiver of counsel without first independently inquiring into defendant's indigency status. Specifically, defendant argues that a trial justice is required to "determine whether a defendant is *constitutionally* entitled to court-appointed counsel, regardless of his or her *statutory* eligibility for Public Defender representation." Conversely, the state responds that the Public Defender's office, alone, is vested with the authority to make indigency determinations under the eligibility statute, G.L. 1956 § 12-15-9. Furthermore, the state argues that, even if the trial justice was required to inquire about defendant's eligibility for representation, defendant has not demonstrated that he could not afford an attorney, and in fact, had continuously represented that he was financially able to hire his own representation during pretrial proceedings.

In support of his position, defendant cites to cases from other jurisdictions which have held that a defendant is entitled to a separate judicial determination of indigency when the public defender has determined that the defendant is not eligible for services. For example, in *People v. Steinbeck*, 186 P.3d 54 (Colo. App. 2007), a defendant, whose private counsel withdrew after part of the proceedings, was found to be ineligible for services by the state public defender's office. *Steinbeck*, 186 P.3d at 57, 58. The Colorado Court of Appeals concluded that the defendant had been denied his statutory right to judicial review of the indigency determination, and further, his constitutional right to court-appointed counsel. *Id.* at 59, 60. In so deciding, the court in *Steinbeck* noted that the mandate for judicial review of indigency determinations was "grounded in a long

history of inherent judicial power to appoint counsel for a defendant without the means to afford counsel in order to ensure a fair trial for the defendant." *Id.* at 57. In *State v. Dean*, 471 N.W.2d 310 (Wis. Ct. App. 1991), the Wisconsin Court of Appeals stated that Wisconsin's eligibility statute permitted judicial review of an indigency determination, but further commented that "[t]here are situations, as here, where a defendant does not meet certain indigency criteria, but nevertheless is unable to afford counsel." *Dean*, 471 N.W.2d at 313, 314. The court in *Dean* further concluded that a trial justice "is required to go beyond the public defender's determination that a defendant does not meet the legislative criteria and determine whether the 'necessities of the case' and the demands of 'public justice and sound policy' require appointing counsel." *Id.* at 314.

The defendant also relies on *Ingram v. Justice Court for Lake Valley Judicial District of El Dorado County*, 447 P.2d 650 (Cal. 1968), to support his position that the constitution requires this independent inquiry. In *Ingram*, the Supreme Court of California was tasked with determining the opposite situation to the case at bar—whether a court may review a public defender's determination that a defendant was indigent and eligible for services. *Ingram*, 447 P.2d at 651. The court ultimately held that judicial review of this determination was inappropriate. *Id.* at 655. Nevertheless, in dicta, the court discussed a scenario similar to the case at bar, and commented that a defendant would be "entitled to judicial review of a determination of *non*indigence not because of any language in [California's eligibility statute] but because of the fundamental constitutional guarantee of counsel to all persons accused of crime." *Id.* at 654.

However, all three of the cases defendant cites for support are distinguishable from the case before us. *Ingram*, as we have stated, involved the opposite set of facts to the case before us. *See Ingram*, 447 P.2d at 651. Furthermore, in *Steinbeck*, the Colorado Court of Appeals held that "a defendant bears the initial burden of raising his claim of indigency to the court[,]" and that the

defendant in that case had "provided the trial court on more than one occasion with facts indicating that he could not afford to retain counsel." *Steinbeck*, 186 P.3d at 56, 59. Similarly, in *Dean*, the Wisconsin Court of Appeals stated that "[a] defendant who seeks appointed counsel must present evidence to the trial court of his or her assets, income, liabilities and attempts to retain counsel." *Dean*, 471 N.W.2d at 315. In that case, the defendant had claimed indigency on multiple occasions, the state had stipulated to the defendant's indigent status at a postconviction-relief hearing, and one of the judges presiding over the defendant's proceedings had "specifically stated that [the defendant] could not afford an attorney." *Id.* at 312, 315. Conversely, here, defendant continuously maintained before the Superior Court hearing justices that he had funds to hire an attorney. Even after defendant claimed that he was indigent but was deemed ineligible by the Public Defender, defendant again represented to the hearing justices that he would be able to raise funds to hire an attorney.

Additionally, the defendants in *Steinbeck* and *Dean* were entitled to a statutory right of review of a public defender's indigency determination under the laws of Colorado and Wisconsin, respectively. *Steinbeck*, 186 P.3d at 56; *Dean*, 471 N.W.2d at 313. In Rhode Island, the statute defining eligibility requirements for indigent representation does not expressly mandate or permit a trial justice to review the Public Defender's determination of ineligibility. *See* G.L. 1956 § 12-15-9.[9]

---

[9] General Laws 1956 § 12-15-9 reads, in pertinent part:

> "If the public defender, after examination and investigation of the financial statement, is satisfied that the person submitting it is an indigent defendant, the public defender or one of his or her assistants shall defend the person; provided, that if the public defender is satisfied that the person is not an indigent defendant, he or she shall notify the court which referred the person to the public defender's

- 14 -

Moreover, this Court has held that a defendant may demonstrate a voluntary waiver of the constitutional right to counsel by his or her actions. *See Laurence*, 848 A.2d at 254. For example, in *Laurence*, we determined that a defendant who repeatedly rejected the services of court-appointed counsel had voluntarily waived his right to an attorney, even though that defendant "asserted many times at trial that it was not his desire to represent himself and that he felt coerced into doing so[.]" *Id.* at 254, 255; *see also State v. Thornton*, 800 A.2d 1016, 1026 (R.I. 2002) ("[The defendant's] repeated refusal to accept the services of competent court-appointed defense counsel demonstrates clearly the voluntary waiver of his right to counsel, and that he was not in any way unconstitutionally 'forced' to proceed *pro se*.").

Here, we are of the opinion that, despite defendant's claims that he was forced to proceed to trial without counsel, defendant's continuous failure to obtain representation demonstrates a voluntary waiver of counsel. As set forth above, defendant repeatedly represented to two justices of the Superior Court that he was able to afford counsel, but that he was not comfortable with the retainer payment system after his experience with his prior attorneys. Moreover, defendant was generously granted more than ten continuances over the course of fourteen months, yet he still failed to procure representation, notwithstanding his many assurances to the court that he would hire an attorney. As this Court concluded in *Laurence*, to allow defendant to continue this pattern "would be to prevent any trial whatever until the accused person himself should be pleased to

office of the determination that the person is not an indigent defendant."

Furthermore, § 12-15-8 defines an "indigent defendant" as

"a person who after payment of necessary expenses for food, shelter and medical care, does not have sufficient income or assets to enable him or her to retain counsel nor is there any one to whom he or she is entitled to look for support who has that income or assets."

permit it." *Laurence*, 848 A.2d at 255 (quoting *Illinois v. Allen*, 397 U.S. 337, 349 (1970)). Thus, as we have held, it is clear that "[t]he defendant's actions, rather than his words, demonstrate that he waived his right to counsel." *Id.* at 254.

Accordingly, we are of the opinion that the trial justice did not err in determining that defendant voluntarily waived his right to counsel prior to trial.

**B**

**Knowing and Intelligent**

The defendant also argues that he did not knowingly or intelligently waive his right to counsel. The defendant contends that the trial justice did not consider defendant's lack of understanding that, upon assenting to the motion to withdraw, he would be required to proceed to trial *pro se* if he did not secure other representation. The defendant asserts that the trial justice looked only to defendant's actions following the withdrawal and that, therefore, the trial justice's finding "was based on an incomplete assessment of the circumstances[.]" The state counters that, upon withdrawal of defendant's retained attorney and over the course of the many subsequent pretrial hearings, "defendant was warned that his two options were to hire a replacement attorney or to represent himself." Consequently, the state contends, defendant's waiver of counsel, "by virtue of his refusal to hire counsel for over a year despite repeated opportunities and warnings, was voluntary, knowing and intelligent."

This Court has held that "[a] valid waiver is effective only if a 'defendant knows what he or she is doing and his or her choice is made with eyes open.'" *Cruz*, 109 A.3d at 390 (brackets omitted) (quoting *Chabot*, 682 A.2d at 1380). "A criminal defendant, therefore, should be 'made aware of the dangers and disadvantages of self-representation.'" *Id.* (quoting *Chabot*, 682 A.2d at 1380). However, this Court has also stated that, while "a detailed colloquy between a trial justice

and a defendant on the record assists the trial justice in ascertaining the knowing and intelligent nature of a defendant's waiver[,] * * * 'such an inquiry is not constitutionally required.'" *Id.* (quoting *State v. Spencer*, 783 A.2d 413, 416 (R.I. 2001)).

The defendant contends that the first hearing justice's colloquy with defendant prior to granting the motion to withdraw was "clearly insufficient" to enable the hearing justice to be certain that defendant "fully understood the potential consequences of his actions." A review of the record shows that, at the hearing during which the motion to withdraw was granted, the first hearing justice informed defendant of the seriousness of his situation prior to granting the motion. The hearing justice stated: "Mr. Souto, this is a critical situation as you are facing a felony charge, facing a trial, facing an offer. * * * What you really need right now is an attorney." The hearing justice further informed defendant that he had a right to represent himself during the legal process. It is also true that the hearing justice did not expressly tell defendant that he would be required to proceed *pro se* if he did not secure representation prior to trial.

However, even if we assume that, at the time of Connors' withdrawal, defendant did not understand that he might be required to proceed to trial *pro se* if he did not hire an attorney, this fact does not demonstrate a constitutionally inadequate waiver of counsel. The relevant inquiry here is whether the trial justice erred in finding that defendant knowingly and intelligently waived his right to counsel prior to trial. As we have stated, in the fourteen months following Connors' withdrawal from defendant's representation on March 13, 2014, and prior to the May 18, 2015 trial, defendant appeared before two justices of the Superior Court at least a dozen times. At each hearing, the hearing justices emphasized the critical need for defendant to retain an attorney as soon as possible. The hearing justices also made it clear to defendant that the case needed to move to trial, and on several occasions, set trial dates. Importantly, defendant was expressly warned at

several of those hearings that he would represent himself at trial if he did not obtain an attorney,

and his responses suggested that he understood this possibility.[10]

---

[10] For example, on May 1, 2014, more than a year before trial, defendant was warned at a pretrial conference that he would be representing himself at trial. The following colloquy took place at that hearing:

| "THE COURT: | I'd love to hear the side of your story. For you to say it here is to put you at risk because they're going to use what you say against you at trial, and you have a right not to incriminate yourself. If we get you to an attorney, you're protected. I'm trying to protect you. So if you get an attorney, fine. Otherwise, by then, I will read the -- I will read the police report. I will consider that offer, and I'll hear from you if you're going to represent yourself. |
| "THE DEFENDANT: | I'm not going to represent myself. How are you going to try to force something? |
| "THE COURT: | If you're not going to represent yourself then please do something about it for the sixth time, the sixth time. Do something about it. Get an attorney." |

The defendant also would have been aware of this possibility after a brief discussion between counsel for the state and the hearing justice on September 15, 2014, which proceeded as follows:

| "[THE STATE]: | This case was already set down for trial on or after October 1st; I ask that it remain. The defendant can represent himself at this point. |
| "THE COURT: | Even though he's representing himself, are you going to give any offers? |
| "* * * | |
| "THE COURT: | Ready trial after October 1st? |
| "THE DEFENDANT: | No, I'm not." |

- 18 -

Moreover, we give deference to the trial justice's finding that defendant intentionally manipulated the proceedings by "stalling trial perhaps indefinitely or at least until [defendant] totally succeeded in wearing down the resolve of the State and its witnesses * * *." *See Thornton*, 800 A.2d at 1030 ("We accord great deference to the trial justice's factual determination that [the defendant's] requests for new counsel had been strategically motivated to manipulate and delay the start of his trial, and it is reasonable for us to weigh the manipulative intent factor heavily against [the defendant]."). On the first morning of trial, the trial justice carefully reviewed the travel of the case, noted a defendant's critical right to be able to choose his or her counsel, and

---

When the matter was set for trial before the second hearing justice, defendant made a representation that he could not afford a lawyer at that time. The hearing justice expressly informed defendant of the consequences of failure to obtain representation:

| "THE COURT: | Mr. Souto, you've had more than enough time. If you are indigent as you claim you are, you don't have any money, then you might be eligible for the Public Defender's office services, but you have to apply. * * * |
| "* * * | |
| "THE COURT: | Do you think you can just keep getting this case continued and continued because you say you don't have a lawyer when it's called ready for trial back in September? |
| "THE DEFENDANT: | No. |
| "* * * | |
| "THE COURT: | Either you're going to the Public Defender's office or you're going to represent yourself. |
| "* * * | |
| "THE COURT: | * * * You are to go see [the public defender], make your own appointment, meet with them, give them the information necessary. This case is going to go to trial on this day, do you understand? One week from today." |

- 19 -

decided to proceed with defendant representing himself after considering the totality of the circumstances of the case. We see no reason to conclude that this decision was in error or a violation of defendant's constitutional rights.

The defendant contends that the trial justice failed to address the remainder of the *Chabot* factors, and that these factors would cut in favor of the conclusion that defendant did not knowingly and intelligently waive his right to counsel. The defendant argues that his background and experience rendered him incompetent to present his own defense, that he was not afforded standby counsel, and that he did not have any prior "useful experience with the criminal justice system."

First, this Court has been clear that a trial justice is not required to consider all of the *Chabot* factors absent an issue with defendant's mental competency. *See Laurence*, 848 A.2d at 254. There is no suggestion here that mental competency was at issue. Furthermore, we have held that "a trial justice 'need not make any assessment of the extent of the defendant's technical legal knowledge in determining the defendant's knowing exercise of the right to defend himself.'" *Cruz*, 109 A.3d at 390 (quoting *State v. Briggs*, 787 A.2d 479, 485 (R.I. 2001)). It is true that defendant did not have standby counsel at the proceedings, and, for the sake of this discussion, we also assume that defendant is relatively unfamiliar with the judicial system. However, given the hearing justices' clear warnings to defendant at the numerous pretrial hearings about the dangers of proceeding *pro se*, in addition to the trial justice's finding that defendant manipulated the proceedings by intentionally delaying his quest to engage an attorney, we cannot say that the trial justice erred in finding that defendant knowingly and intentionally waived his right to counsel.

Thus, after careful consideration of the totality of the circumstances, it is our opinion that the defendant voluntarily, knowingly, and intelligently waived his right to counsel.

# IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of conviction. The record shall be remanded to the Superior Court.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Mario Souto. |
| **Case Number** | No. 2015-295-C.A. (P1/12-3130A) |
| **Date Opinion Filed** | June 13, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For State:<br><br>Virginia M. McGinn<br>Department of Attorney General |
| | For Defendant:<br><br>Angela M. Yingling<br>Office of the Public Defender |