21CA2097 Peo v Archuleta 09-05-2024 COLORADO COURT OF APPEALS Court of Appeals No. 21CA2097 Adams County District Court No. 19CR5125 Honorable Sean Finn, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Christopher Archuleta, Defendant-Appellant. JUDGMENT AFFIRMED, ORDER AFFIRMED, AND CASE REMANDED WITH DIRECTIONS Division A Opinion by CHIEF JUDGE ROMÁN Martinez* and Richman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced September 5, 2024 Philip J. Weiser, Attorney General, Lane Towery, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024. 
1 ¶ 1 Defendant, Christopher Archuleta, appeals the judgment of conviction entered on jury verdicts finding him guilty of two counts of vehicular homicide, four counts of vehicular assault, one count each of third degree assault and careless driving resulting in death, and two counts of careless driving resulting in injury. Archuleta also appeals a restitution order related solely to restitution awarded to Sentry Insurance. We affirm the judgment of conviction and the restitution order related to Sentry Insurance, but remand for correction of the mittimus to remove a sum of restitution that was withdrawn by the prosecution. I. Background ¶ 2 During the early morning hours of August 25, 2019, Archuleta was driving his friend home after a night out drinking. While he was attempting to pass another car, a collision occurred, and both cars then collided with an oncoming semitruck. Archuleta, his friend, and the driver of the other car he was attempting to pass were seriously injured; however, the other car’s passenger was killed. The semitruck driver sustained minor injuries. ¶ 3 At trial, the prosecution presented evidence that before the collision, Archuleta and his friend drove to a liquor store where 
2 Archuleta purchased a bottle of liquor, which they drank out of the bottle in the parking lot before they went to an arcade. At the arcade, Archuleta and his friend continued to drink until their server, who was trained to recognize the signs of intoxication, refused to continue serving them based on their perceived intoxication level. The server offered to pay for a ride home, which Archuleta refused. Approximately ten minutes later, the collision occurred. ¶ 4 A police-initiated blood test, conducted seven hours after the crash, registered Archuleta’s blood alcohol content (BAC) at .051. However, an expert who conducted a retrograde extrapolation estimated that Archuleta’s BAC at the time of the accident would have been between .124 and .233. And an emergency room physician testified that Archuleta’s BAC was .186 when he arrived at the hospital. ¶ 5 Archuleta defended against the charges on the grounds that he was neither intoxicated nor the proximate cause of the accident. After a four-day jury trial, the jury convicted Archuleta as charged. The district court sentenced him to fifteen years in prison. 
3 II. Discussion ¶ 6 Archuleta contends that the district court erred by (1) admitting inadmissible hearsay under CRE 703; (2) ordering restitution where the prosecution failed to prove by a preponderance of the evidence that he was the proximate cause of the losses sought by Sentry Insurance; and (3) failing to correct a portion of the restitution order that had been withdrawn by the prosecution. We disagree with Archuleta’s first two contentions but agree with his third. Therefore, we affirm the judgment of conviction and the restitution order related to Sentry Insurance, but remand for correction of the mittimus to remove the portion of restitution that was withdrawn. A. Hospital BAC Evidence ¶ 7 At trial, the prosecution presented evidence of Archuleta’s BAC, which had been obtained at the hospital, and testified to by the emergency room physician who treated his injuries. Archuleta contends that the district court erred by admitting this evidence because it was inadmissible hearsay under CRE 703, and the court failed to conduct the appropriate balancing test required under the rule. We need not address this contention because the record 
4 reveals that the alleged error was harmless. The hospital BAC evidence was merely cumulative of other, overwhelming evidence of Archuleta’s intoxication. 1. Standard for Reversal and Preservation ¶ 8 If a claim of error was preserved in the district court, we review for harmless error. Under this standard, we may reverse only if the error substantially influenced the verdict or impaired the fairness of the trial. See Crim. P. 52(a); Hagos v. People, 2012 CO 63, ¶ 12. A reviewing court considers the importance of the evidence to the proponent’s case, whether the evidence was cumulative, the presence of other evidence corroborating or contradicting the point for which the evidence was offered, and the overall strength of the proponent’s case. People v Casias, 2012 COA 117, ¶ 64. ¶ 9 The parties dispute whether Archuleta preserved this issue for appeal. However, we need not resolve this dispute because even assuming the harmless error standard applies, we conclude that reversal is not warranted. Cf. Hagos, ¶ 14 (noting that plain error “must impair the reliability of the judgment of conviction to a greater degree than under harmless error to warrant reversal”). 
5 2. Analysis ¶ 10 As relevant here, a conviction for vehicular homicide requires that the prosecution prove that the defendant drove a motor vehicle while under the influence of alcohol or drugs, or both, and that such conduct is the proximate cause of the death of another. § 18-3-106(1)(b)(I), C.R.S. 2024. “Driving under the influence” means driving a vehicle when a person has consumed alcohol or drugs, or both, to a degree that the person is substantially incapable, mentally or physically, or both, of exercising clear judgment, sufficient physical control, or due care in the safe operation of a vehicle. § 18-3-106(1)(b)(IV). There is a per se presumption that the defendant is under the influence if at the time of the crime, or within a reasonable time thereafter, their BAC is 0.08 or more or the content of their blood is five nanograms of THC or more. §§ 18-3-106(2)(c); 18-3-106(2)(d). However, even a BAC between 0.05 and 0.08 “may be considered with other competent evidence in determining whether or not the defendant was under the influence of alcohol.” § 18-3-106(2)(b). 
6 ¶ 11 We conclude that any alleged error by the district court in admitting the hospital BAC evidence was harmless because the evidence of Archuleta’s intoxication was overwhelming. ¶ 12 The prosecution presented the following evidence that Archuleta was intoxicated at the time of the collision: • Archuleta’s friend testified that they took shots of liquor in the parking lot before entering the arcade. • Archuleta’s friend and the arcade server testified that while at the arcade Archuleta ordered and drank two twenty-three-ounce beers and a double shot of hard liquor. • The arcade server, who was trained to identify intoxicated individuals, refused to continue to serve Archuleta based on her observation that he was intoxicated. She testified that he had slurred speech, was repeating himself, was fidgety, and while “he could stand up okay,” he was “starting to wobble around a little bit” and was “not okay to drive.” 
7 • Seven hours after the collision, Archuleta’s BAC was 0.051, and he tested positive for cannabinoids with a THC content of 4.6 nanograms. • An expert testified that Archuleta’s BAC at the time of the crash, based on retrograde expulsion, was likely between 0.124 and 0.233. • An expert testified that THC usually reaches its peak absorption in the body while a user is still smoking and then drops “relatively quickly after the fact” such that an infrequent user will drop below five nanograms after about one hour and a frequent user will drop below five nanograms after about three and a half hours — permitting a reasonable inference that Archuleta had well over five nanograms in his system near the time of the accident. • An expert testified that the consumption of alcohol and THC together has an additive effect and the combination of the two substances will cause more impairment than either of the two substances alone. 
8 • Archuleta admitted to law enforcement officers that he had been drinking and smoked marijuana that evening. • Several empty alcohol and marijuana containers were found in Archuleta’s car. • Law enforcement officers observed indicia of intoxication including an odor of alcohol on Archuleta’s breath and bloodshot eyes. ¶ 13 In our view, the foregoing evidence overwhelmingly supported the jury’s determination that Archuleta was intoxicated, and therefore, we conclude that any error was harmless. See Campbell v. People, 2019 CO 66, ¶¶ 34-43 (concluding that error in allowing an officer to testify about the horizontal gaze nystagmus test was harmless in light of the overwhelming evidence of the defendant’s intoxication including defendant’s admissions, indicia of intoxication, and BAC); Tevlin v. People, 715 P.2d 338, 342 (Colo. 1986) (concluding the district court’s erroneous admission of certain expert testimony was harmless “[i]n light of the overwhelming evidence of guilt”). ¶ 14 In so concluding, we are unpersuaded by Archuleta’s argument that the hospital BAC evidence was not harmless because 
9 the other evidence of intoxication was “weak,” and the hospital BAC evidence alone allowed the jury to permissibly infer that he was under the influence of alcohol. First, we disagree that the other evidence of intoxication was “weak.” The intoxication evidence outlined above was overwhelming and we can see no reasonable possibility that any error pertaining to the hospital BAC evidence substantially contributed to Archuleta’s convictions. Second, the prosecution presented other competent evidence at trial that overwhelmingly demonstrates that Archuleta was under the influence of alcohol or drugs or both. Namely, expert testimony was presented that (1) Archuleta’s BAC at the time of the crash was likely between 0.124 and 0.233; (2) seven hours after the crash the content of his blood contained 4.6 nanograms of THC; and (3) the consumption of alcohol and THC together has an “additive” effect. ¶ 15 Accordingly, we conclude that any alleged error by the district court in allowing the emergency room physician to testify about Archuleta’s hospital BAC evidence was harmless and does not warrant reversal. 
10 B. Restitution ¶ 16 The prosecution filed a motion requesting restitution for the crime victim compensation board’s costs associated with the victim’s funeral expenses, medical expenses incurred by Jose Castro (who was the driver of the other car), and reimbursement to Sentry Insurance for the losses they paid on behalf of the semitruck driver. Archuleta stipulated to the requested restitution for the crime victim compensation board and Castro, but objected to the requested amount for Sentry Insurance and requested a hearing. The district court ordered the stipulated amounts and set the matter for a hearing. Prior to the hearing, the prosecution filed an amended motion withdrawing the request for restitution for Castro because he had received a civil judgment against Archuleta that compensated his losses. After the hearing, the district court ordered restitution for Sentry Insurance, but never addressed the withdrawn restitution request for Castro. 1. Proximate Cause ¶ 17 Archuleta contends that the prosecution failed to prove that he was the proximate cause of the $134,931.06 in losses sustained by Sentry Insurance. We disagree. 
11 2. Standard of Review ¶ 18 A challenge to the district court’s proximate cause finding is reviewed for clear error. Martinez v. People, 2024 CO 6M, ¶ 32. Applying this standard, we must affirm the court’s findings unless they are without record support. Id. at ¶ 34. 3. Analysis ¶ 19 Restitution means “any pecuniary loss suffered by a victim . . . [that was] proximately caused by an offender’s conduct and that can be reasonably calculated and recompensed in money.” § 18-1.3-602(3)(a), C.R.S. 2024. The prosecution bears the burden of proving by a preponderance of the evidence that the victim’s losses were proximately caused by the defendant. People v. Stone, 2020 COA 24, ¶ 6. Proximate cause in the context of restitution is “any cause which in natural and probable sequence produced the claimed injury.” Martinez, ¶ 13. A district court may impose restitution against a defendant only for losses proximately caused by his conduct. See Cowen v. People, 2018 CO 96, ¶¶ 16-21; see also People v. Steinbeck, 186 P.3d 54, 60 (Colo. App. 2007). ¶ 20 The prosecution sought restitution for Sentry Insurance for the losses they paid on the semitruck driver’s behalf for the injuries 
12 the driver suffered as a result of the accident as well as indemnity benefits and a settlement agreement. The losses totaled $134,931.06. ¶ 21 At the hearing, the prosecution presented evidence from the Sentry Insurance claims adjuster who handled the workers’ compensation claim on behalf of the semitruck driver. The claims adjuster testified that Sentry Insurance made payments to the medical providers for the semitruck driver’s injuries, as well as indemnity benefits and a settlement agreement, which were both paid directly to the semitruck driver. The adjuster testified that the insurance company investigated and confirmed that all the payments requested, and ultimately paid out, were from the accident involving Archuleta. ¶ 22 Based on this testimony, the district court found that Archuleta was the proximate cause of Sentry Insurance’s losses because “but for [Archuleta’s] criminal conduct . . . [the semitruck driver] would not have been injured while on the job” and therefore, would not have “needed to file a claim for workers’ compensation benefits.” 
13 ¶ 23 Archuleta contends that the district court’s findings lacked record support because they were based, in part, on the court’s “personal understanding of the workers’ compensation process.” In particular, he points to the court’s findings that the claims adjuster (1) “process[ed] every single payment request;” (2) had “specific [payment] schedules” to abide by; and (3) only recorded a claim when “the medical treatment was causally related to the covered injury, reasonable, and necessary.” ¶ 24 But even discounting the district court’s personal observations and findings relating to the court’s “past life with [workers’ compensation claims],” the evidence nevertheless supports the restitution award. The claims adjuster testified that the payments Sentry Insurance made were for injuries the semitruck driver sustained as a result of the accident with Archuleta. The adjuster testified that she reached this conclusion based on her own investigation where she reviewed the semitruck driver’s written statements, the police reports, and the medical reports. Further, she testified that she had no reason to believe that there was any other possible cause of the semitruck driver’s injuries besides the accident with Archuleta. And the district court found the claims 
14 adjuster’s testimony was credible. We therefore conclude that the record supports the district court’s proximate cause determination. 4. Withdrawn Restitution ¶ 25 The parties agree, as do we, that the mittimus should be corrected to remove the portion of restitution award that was awarded to Jose Castro. See Crim. P. 36 (“Clerical mistakes in judgments, orders, or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time . . . .”); People v. McLain, 2016 COA 74, ¶ 27 (Rule 36 applies to “uncontroversial errors” that “should not require clarification from the parties or lead to further adversarial proceedings.”), overruled on other grounds by People v. Weeks, 2021 CO 75, ¶ 27. The record reflects that the prosecution withdrew its request for restitution for Castro when he received a civil judgment against Archuleta that compensated his losses; however, the district court’s restitution order never addressed the prosecution’s request. Accordingly, we remand for the court to amend the mittimus and remove the $18,682.62 of restitution awarded to Jose Castro. 
15 III. Disposition ¶ 26 The judgment of conviction and restitution order are affirmed, and the case is remanded to the district court to correct the mittimus. JUSTICE MARTINEZ and JUDGE RICHMAN concur.